**Pawel CZERNICKI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 01 Civ. 4311(JGK).**

United States District Court, S.D. New York.

July 2, 2003.

### *OPINION AND ORDER*

KOELTL, District Judge.

The petitioner, Pawel Czernicki, moves pursuant to 28 U.S.C. § 2255 to vacate the sentence imposed following his conviction, pursuant to his guilty plea, for conspiracy to produce and transfer identification, false identification and immigration documents, in violation of Title 18, United States Code, Sections 371 and 1028(f). Czernicki argues that his sentence should be vacated because the Government was allegedly involved in an unconstitutional search and seizure at 155 Huron Street and because the Government allegedly engaged in out-

rageous conduct in connection with that search and using the fruits of that search. The petitioner contends that the Government was in fact involved in what the Government has asserted was a private burglary at 155 Huron Street. The petitioner also moves for discovery, including unsealing the guilty pleas and sentencing of two individuals involved in the burglary at 155 Huron Street in order to support his contention of government involvement. For the reasons set forth below, the petition is dismissed, and the motion for discovery is denied.[1]

## I.

Czernicki's conviction arose out of an investigation which, the Government contends, began on December 17, 1998, when an individual (the "informant") who had previously provided the Government with information regarding criminal activity contacted Immigration and Naturalization Service ("INS") Special Agent Ira Lieberman. (Aff. of Ira Lieberman ("Lieberman Aff.") sworn to Dec. 29, 1998 ¶ 6.) The informant and another individual then met with Special Agent Lieberman and another agent. They advised the agents that, on December 16, 1998, they, along with two other individuals, had forcibly entered and removed documents from Apartment 5 at 155 Huron Street, Brooklyn, New York. (Lieberman Aff. ¶ 8.) The apartment be-

longed to Czernicki's co-defendant.[2] (Lieberman Aff. ¶ 9.) Two of these individuals provided the INS with information and the documents, which were determined to be real and counterfeit passports and visas. (Lieberman Aff. ¶ 9.) In an affirmation submitted in connection with the prosecution of Czernicki, Special Agent Lieberman swore that he had never heard about the robbery until the informant advised him about the event after it had already occurred. (Aff. of Ira Lieberman ("Lieberman Aff.") sworn to April 30, 1999 ¶ 10.) The investigation prompted by these documents led to Czernicki's ultimate arrest and conviction.

The petitioner pleaded guilty, pursuant to a plea agreement dated July 6, 1999, to one count of conspiracy to produce and transfer identification, false identification and immigration documents, in violation of Title 18, United States Code, Sections 371 and 1028(f). (Plea Agreement dated July 6, 1999 ("Plea Agreement") attached as Ex. C to Letter of Andrew J. Ceresney dated December 20, 2001 ("Ceresney Letter").) On May 3, 2000, Czernicki was sentenced principally to 39 months in custody, followed by three years of supervised release, and a fine of $7500. (Tr. dated May 3, 2000 attached as Ex. F to Ceresney Letter at 20–21.) The Court sentenced the defendant to two months below the

1. In his original petition, Czernicki made allegations against both the attorney who represented him in connection with his guilty plea and a successor attorney who represented him in connection with his sentence. The Government responded with affidavits from the attorneys denying the allegations. The Court therefore appointed counsel for the petitioner in view of the possibility of an evidentiary hearing on Czernicki's allegations. Represented by counsel, Czernicki withdrew any allegations of ineffective representation by either of his attorneys with regard to any part of the proceedings in this case. (*See* Letter of Howard Jacobs dated August 22, 2002.) Therefore, there are no further claims in this

case relating to Czernicki's legal representation in this proceeding.

2. The petitioner concedes that the apartment belongs to his co-defendant, Jaroslaw Rozkowski, (Czernicki Br. at 32), which is supported by Special Agent Lieberman's discovery of a telephone bill addressed to Rozkowski at 155 Huron Street, Apartment 5 (Lieberman Aff. ¶ 9). Notwithstanding the Agent's indication that the public records indicate the apartment belongs to "Paul Tchernitsky," (Lieberman Aff. ¶ 5), an alias associated with Czernicki, (Lieberman Aff. ¶ 2), neither party disputes that the petitioner does not own the apartment.

Guideline Sentencing Range specified in the plea agreement because the Court downwardly departed upon a finding that the Criminal History Category had overstated the defendant's criminal history.

## II.

■ The petitioner alleges that his sentence should be vacated or modified based on alleged violations of his Fourth Amendment right to be free from unreasonable searches and seizures and his Fifth Amendment right to substantive due process, arising from alleged Government involvement in the burglary of 155 Huron Street.

The petitioner's guilty plea waived his ability to raise these claims. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *see also United States v. Arango*, 966 F.2d 64, 66 (2d Cir.1992) ("By pleading guilty, however, [the defendant] waived his right to object to the constitutionality of the search of the van.")

At his guilty plea allocution, under penalty of perjury,[3] the petitioner confirmed that he was competent to enter a plea and was satisfied with the representation of his attorney; that he had reviewed and understood the charges against him; that he understood the Government's burden should he choose to go to trial; that the petitioner understood all of his rights and was waiving them; and that he was knowingly and voluntarily entering a plea of guilty. (Tr. dated Jul. 6, 1999 attached as Ex. D to Ceresney Letter at 17–25.)

Thus, because the petitioner knowingly, voluntarily, and intentionally pleaded guilty on July 1, 1999, the petitioner's claims relating to the alleged unconstitutionality of the prior search and seizure are not a basis to vacate or modify his sentence. *See Chapman v. Vanzandt*, No. 96 Civ. 6940, 1997 WL 375668, at *2–3 (S.D.N.Y. Jul.08, 1997).

In addition, Czernicki waived this argument when he knowingly and voluntarily signed the Plea Agreement with the United States Attorney for the Southern District of New York. The Plea Agreement provides that "the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Sentencing range. . . ." (Plea Agreement at 4.) The stipulated sentencing range was 41–51 months and the Court actually sentenced the petitioner below that range to 39 months imprisonment.

The Second Circuit Court of Appeals has held such waivers enforceable:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

*United States v. Salcido–Contreras*, 990 F.2d 51, 53 (2d Cir.1993) (per curiam); *see also United States v. Djelevic*, 161 F.3d 104, 106–07 (2d Cir.1998) (upholding plea agreement waiver provision); *Henriquez v. U.S.*, No. 03 Civ 478, 2003 WL 21242722, at *1 (S.D.N.Y. May 29, 2003).

At his plea allocution, Czernicki affirmed, under penalty of perjury, that he

---

**3.** Czernicki affirmed the truth of his statements under penalties of perjury. (Tr. dated Jul. 6, 1999 attached as Ex. D to Ceresney Letter at 3–4.)

was satisfied with the representation of his attorney; that he had reviewed and understood the charges against him; that he fully understood the Plea Agreement; that he was knowingly and intentionally entering into the Plea Agreement; and that he understood that the agreement waived his right to appeal or challenge under 284 U.S.C. § 2255 any sentence within or below the stipulated sentencing range. (Tr. dated Jul. 6, 1999 attached as Ex. D to Ceresney Letter at 9, 17–18, 25–28.)

Accordingly, Czernicki's knowing, intentional, and voluntary agreement to the Plea Agreement waived his right to challenge his sentence here. Czernicki was sentenced below the Guideline Sentencing Range specified in the Plea Agreement. That agreement waived the petitioner's right to raise a § 2255 motion to challenge his sentence.[4] The waiver is enforceable, and bars the petitioner's § 2255 motion.

### III.

■ In any event, the petitioner's claims lack merit because Czernicki lacks sufficient interest to protest the search of the apartment at 155 Huron Street which belonged to his co-defendant. *United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) (no basis to claim Forth Amendment violation of defendant's rights for search of third party's briefcase). "[T]he defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *Id.* at 731, 100 S.Ct. 2439 (emphasis in original); *see also Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). This protection has been interpreted to extend "only

to people in 'their' houses." *Minnesota v. Carter,* 525 U.S. 83, 89, 119 S.Ct. 469, 142 L.Ed.2d 373(1998). While an overnight guest in a home may claim Fourth Amendment protection, *see, e.g., Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), one who is merely present with the consent of the householder may not. *Carter,* 525 U.S. at 90, 119 S.Ct. 469.

The apartment at 155 Huron Street belonged to the petitioner's co-defendant, Jaroslaw Rozkowski, and the petitioner claimed no possessory interest in the property. There is no basis to conclude that petitioner had a reasonable expectation of privacy in the premises sufficient to raise a Fourth Amendment claim.

### IV.

■ Moreover, there has been no showing of outrageous conduct that would entitle the petitioner to relief. In an extreme case, government investigation practices might be "so outrageous that due process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction." *United States v. Rahman,* 189 F.3d 88, 131 (2d Cir.1999) (per curiam) (*quoting United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)). However, such conduct only violates due process when it "shocks the conscience." *Rahman,* 189 F.3d at 131 (*quoting Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)) (internal citations omitted). In light of the "courts' well-established deference to the Government's choice of investigatory methods," *Rahman,* 189 F.3d at 131 (*citing United States v. Myers,* 692 F.2d 823, 843 (2d Cir.1982)),

4. There is no challenge in this case to the process by which the waiver of the collateral attack rights were obtained. *See Frederick v. Warden,* 308 F.3d 192, 196 (2nd Cir.2002) (". . . a waiver of appellate or collateral attack

rights does not foreclose an attack on the validity of the procedure, here, the plea agreement.") In this case, the petitioner has withdrawn any challenges to the representation he received. *See supra* note 1.

the burden of establishing outrageous government conduct is very heavy. *See United States v. Schmidt,* 105 F.3d 82, 91 (2d Cir.1997); *see also Catino v. United States,* No. 00 Civ 7226, 2001 WL 536928, at *5 (S.D.N.Y. May 21, 2001).

Czernicki alleges that the Government's alleged involvement in the burglary of 155 Huron Street constitutes outrageous conduct. The petitioner, however, has proffered no facts to support his claim of government involvement in the burglary and to counter the Government's affidavits to the contrary.

## V.

To support his § 2255 petition, and to overcome the lack of evidence of government involvement, Czernicki also moved to unseal transcripts of the plea and sentences for two individuals who the petitioner contends were acting on behalf of the Government in the robbery. A petitioner in a habeas corpus proceeding generally does not have a right to discovery unless the petitioner can show good cause. *See Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997); Rule 6(a) of the Rules Governing Section 2255 Proceedings; *see also Rossney v. Travis,* No. 99 Civ. 4562, 2003 WL 135692, at *12 (S.D.N.Y. Jan 17, 2003). Nevertheless, with the agreement of the parties in this case, the Court reviewed the sealed transcripts in the other case. Having reviewed the documents sought in camera, the Court found nothing to support the petitioner's contention that the Government was involved in planning, directing, or instigating the robbery at issue; the transcripts do not lend any support to the petitioner's position and in fact support the Government's position in this case that it only learned about the robbery after it occurred. Therefore, the petitioner has failed to make the necessary showing to obtain such discovery, and the motion to unseal is denied.

There is no requirement that the Court conduct a hearing for allegations of outrageous government conduct when facts are undisputed. *United States v. LaPorta,* 46 F.3d 152, 160–61 (2d Cir.1994). Here, the petitioner has not presented any facts or affidavits which rebut the Government's denial of involvement in the burglary of 155 Huron Street. The burglary was conducted by individuals not acting as government agents. Two of the individuals conducting the burglary have pleaded guilty to Hobbs Act robbery. (Ceresney Letter at 16.) The Government has not yet located the other two. (Ceresney Letter at 16.) There is an insufficient showing of outrageous government conduct to hold any hearing. *See, e.g., id.; United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969).

## CONCLUSION

For the reasons explained above, Czernicki's motion to vacate or modify his sentence pursuant to 28 U.S.C. § 2255 and his motion for discovery are denied. The Clerk of the Court is directed to enter judgment dismissing the petition and to close this case.

**SO ORDERED.**